# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

PHILLIP RANSOM, )
)
    Plaintiff, )
)
vs. )
) NO. 4:13-CV-00035-FJG
)
ANTHONY GRISAFE, et al., )
)
    Defendants. )
)
)

## ORDER

Currently pending before the Court is defendants' Motion to Strike Portions of Plaintiff's Expert Report and Testimony (Doc. # 45), defendants' Motion for Summary Judgment (Doc. # 57) and defendants' Motion for Order to Deem Admitted (Doc. # 78).

### I.     BACKGROUND

On November 11, 2010, plaintiff was driving home from Lenexa, Kansas to Kansas City, Missouri between 5:15 p.m. and 6:00 p.m. It was dark and rainy and traffic was heavy. Two miles before the exit to his residence, plaintiff's van began backfiring. The backfires were in rapid succession and occurred close together. About a block from his home, close to the intersection of I-435 and Gregory, plaintiff pulled his van off to the side of the road because the engine died. However, even though he had pulled the van over, the backfires continued. There was one call made to 911 in which the caller reported that they had "heard sounds of shots." The party calling saw no flashes coming from the van, and it was unknown whether the suspects were inside or not. Officers, Tyrone Phillips and Angela Conaway were dispatched to the area at 5:55 p.m.

regarding the white van. As the officers pulled up behind the van and were exiting their police car, the van backfired loudly one time. The officers perceived the backfire to be a gunshot and they fired their weapons approximately four times each in the direction of plaintiff and his van. Plaintiff opened his door momentarily and then closed it again. Plaintiff then slowly exited the van and walked toward the front of the van to check the engine. Officers Phillips and Conaway then began yelling commands at plaintiff, who complied with their directions. When asked whether plaintiff had gestured toward the van, Officer Phillips testified that he recalled plaintiff exiting the vehicle, then reaching back in the vehicle. Officer Phillips thought that plaintiff could be shooting a weapon or loading a weapon. When asked whether he was uncertain as to whether there was a weapon in the plaintiff's hands or not, Officer Phillips responded, "I guess the best way to say it is I don't want to wait until he has a gun pointed at my head or my partner to take any action. At this point, I believed that he had already fired at us with some type of firearm and retrieving another or shooting the firearm that he just used and could do more harm or attempt to. Also at this time I am not sure of his involvement." (Phillips Depo. p. 60). Officer Phillips also testified that he did not perceive that night anything that was like an aiming action or an action toward him or Officer Conaway. (Phillips Dep. P. 58). Officer Conaway also believed that plaintiff had shot at Officer Phillips and herself. (Conaway Depo. p. 49). Officer Conaway did not observe a gun or see his hands as he was coming out of the vehicle but she did see his hands as he was walking back toward the patrol car. (Conaway Depo. p. 69). When plaintiff got out of his van, he thought the officer's gunfire was his van backfiring, until he saw Officer Conaway with her weapon drawn, shooting at him. (Ransom Depo. pp. 40-41). Officer Phillips

directed plaintiff to walk backward and then lay down on the ground and Officer Phillips then handcuffed plaintiff. After Officer Phillips handcuffed him, plaintiff was placed in a police wagon.

Because this was a police involved shooting, Detectives John Randle and Anthony Grisafe were called to the scene to investigate by Sergeant Thomas Dearing. Sergeant Dearing briefed the detectives about what had happened. Detective Grisafe interviewed Officer Conaway at the scene. At some point, Sergeant Dearing directed that plaintiff be taken out of the wagon and the handcuffs removed. Plaintiff asked Detective Randle if he could go home, but was told "No, you are going downtown." (Ransom Depo. p. 87). Thereafter, defendants Grisafe and Randle placed plaintiff into an interrogation room where he remained for 34 minutes while he was questioned regarding an alleged aggravated assault. Plaintiff believed that the door was locked because he heard a latch. Plaintiff alleges that he was held until 8:00 p.m. when he was told that he was free to leave.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts

showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

## III. DISCUSSION

### A. Defendants' Motion for Summary Judgment

Defendants state that this is a qualified immunity case and that Officers Phillips and Conaway mistakenly believed that they had been fired upon by plaintiff. Defendants argue that plaintiff was unaware of the shots being fired at him, so he was not "seized" for the purposes of the Fourth Amendment. However, even if the shots had "seized" him, the officers claim that they are protected by qualified immunity. Defendants also argue that qualified immunity applies to the remaining defendants because the investigators had arguable probable cause to detain plaintiff briefly for questioning.

### 1. Officers Phillips and Conaway

Defendants argue that plaintiff was not "seized" because he did not realize that he was being shot at, the shots did not strike him and his movement was not arrested.

4

Defendants argue that for Fourth Amendment purposes, a seizure occurs only if the plaintiff is physically touched or when he submits to a show of authority. Plaintiff testified that he recalled "a bullet or glass" "grazed the side of my head." (Plaintiff's Depo. p. 45). Additionally, plaintiff states that his movement was restricted because the officers ordered him to get on the ground, show his hands, put his hands up, walk backward, get back on the ground and also because they handcuffed him and locked him in a patrol wagon. The Court finds that there is a question of fact as to whether plaintiff was "seized" by the bullets and the officer's actions.

Defendants also argue that even if plaintiff was seized, qualified immunity protects them due to their reasonable mistake of fact. Defendants argue that they were responding to a report of shots being fired, plaintiff appeared to disregard their commands to stay in the van, the officers could not see plaintiff's hands and they heard what they believed to be the sound of gunshots, leading to the conclusion that their actions in firing on plaintiff were reasonable. Plaintiff argues in opposition that the key question is whether the officer's actions were "objectively reasonable." In Loch v. City of Litchfield, 689 F.3d 961 (8th Cir.2012), the Court stated:

> An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation. . . .[The plaintiff's] claim of excessive force is governed by the Fourth Amendment's prohibition against unreasonable seizures. . . .The reasonableness of a use of force turns on whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his subjective intent or motivation. . . .We must consider the totality of the circumstances, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively fleeing or resisting arrest. . . . The use of deadly force is reasonable where an officer has probable cause to believe that a suspect poses a threat of serious physical harm to the officer or others. . . . We

5

> judge the reasonableness of [the officer's] use of force from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

Id. at 965 (internal citations and quotations omitted).

In the case of Ribbey v. Cox, 222 F.3d 1040, 1042 (8th Cir. 2000), the Eighth Circuit affirmed the district court's denial of summary judgment. In that case, the police officer broke the plaintiff's car window after a high speed chase ended. After the glass was broken, the plaintiff turned away from the window and moved his hands. Plaintiff asserted that this was a reflex to protect himself from the breaking glass, while the defendant officer believed that plaintiff was reaching for a gun (although no gun was found in the car). The Eighth Circuit found that because it was unclear "just what happened during the critical time just before [the officer] shot Ribbey", summary judgment was inappropriate. Id.

Plaintiff argues that in this case, there are disputed issues of fact as well, especially since the officers did not have any reason to believe that a crime had been committed, they did not know for certain that shots had been fired or even where the "shot" came from, plaintiff had not been fleeing from the police or resisting arrest and the officers did not give any pre-shot warning or indeed any verbal warnings before firing their weapons. Conversely, defendants argue that they were responding to a call of "shots being fired" and it was reasonable to assume that the noise they heard after pulling behind the van was a gunshot and they believed they were being ambushed. Additionally, defendants argue that it initially appeared that plaintiff was not heeding their commands to stay in the van and that Officer Phillips thought he saw plaintiff reach back into the van, as if reaching for a weapon. The Court finds that there are disputed

6

issues of fact which preclude the granting of qualified immunity in this case and therefore **DENIES** the Motion for Summary Judgment as to defendants Phillips and Conaway.

### 2. Sergeant Dearing and Detectives Randle and Grisafe

Defendants also argue that summary judgment is appropriate as to the investigators because they had arguable probable cause to detain plaintiff for questioning. Defendants state that Detective Randle canvassed the scene and was briefed by Sergeant Dearing. Detective Grisafe spoke with Officer Conaway who told him that she believed that plaintiff had been firing at herself and Officer Phillips. Officer Phillips also continued to believe that they had been fired upon. Defendants also argue that the investigators reasonably believed that plaintiff consented to giving a statement to them. Defendants state that after Sergeant Dearing instructed them to get a statement from plaintiff, it was standard procedure to take this statement at police headquarters. Defendants state that it is undisputed that plaintiff appeared willing to cooperate and give a statement. Defendants state that plaintiff was never booked, fingerprinted or searched. Defendants state that although plaintiff may have viewed it as an arrest, given the totality of the circumstances, it was reasonable to believe that he had consented.

Plaintiff argues that Sergeant Dearing admitted during his deposition that they did not have probable cause to arrest the plaintiff. During his deposition, Sergeant Dearing testified:

Q. What decision did you make in regard to him going downtown?

A. Detective Grisafe or Randle, I can't remember which one, actually spoke to Mr. Ransom at the scene and they relayed to me, one of the Detectives. I can't remember

7

which one.  I think it may have been Randle, relayed to me Mr. Ransom was very cooperative.  He was very polite.  And I told Detective Randle, I think it was Randle, well, let's get a statement from him.  So they brought him downtown.

Q.  Do you have any knowledge at any point of anyone getting Mr. Ransom out of the patrol wagon?

A. Yes.

Q.  What do you know about that, sir?

A.  Well, when I arrived on the scene, I was told that he was in the back of the patrol wagon and he was in handcuffs.  As time progressed and I started to determine what had happened at the crime scene, I told them to take him out of the wagon, take him out of handcuffs.  And I don't remember who I told that to.  It was probably one of my detectives.

Q.  Why did you do that?

A.  Because as the investigation was progressing and **as I was determining what was happening it didn't look like we had probable cause to arrest him**.

Q.  What factors do you remember that indicated that to you?

A.  I believe we found there was no weapon.  We determined that some course of the investigation, we determined Mr. Ransom's vehicle was backfiring.  One of the officers, I believe it was Phillips said he was being shot at from a field south of that vehicle.  We canine searched that field.  We had tactical teams come out and search that field looking for suspects.  **As the investigation progressed it was my conclusion that we didn't have probable cause at that point.**  Therefore, I had him taken out of the wagon and out of handcuffs.

(Dearing Depo. pp. 19-28)(emphasis added).  Plaintiff points out that Sergeant Dearing believed there was no probable cause, Detective Randle testified that they did not detain him and Detective Grisafe testified that plaintiff was not detained and was not in custody.  However, the defendants' brief claims that they did have probable cause and that plaintiff was detained.  Plaintiff argues that this creates a genuine issue of material fact within the defendants own contrary and contradictory positions.  Plaintiff argues that he should have been released once it was determined by Sergeant Dearing

8

that they had no probable cause to detain him. Plaintiff also argues that the investigators could not have reasonably believed that he consented to giving a statement because when he asked whether he could go home, he was told "No, we are going downtown." (Ransom Depo. p. 87). Plaintiff was driven downtown to police headquarters, he was asked about his entire family, a sketch was made of his face, he was asked if he was a "member of a gang" whether he had any "gold in his mouth" and whether he was missing any teeth, etc. (Exh. 4 to Suggestions in Opposition). At police headquarters, plaintiff was placed in a locked room and his status was listed as "Suspect." The type of offense was listed as "Aggravated Assault." He was given a Miranda waiver for custodial interrogations. Detective Randle wrote "11-11-10/ 1900 Hrs." for the "Date and Time Taken Into Custody." At the end of the questioning, Detective Randle told plaintiff, "Alright Mr. Ransom, you're free to go." Detective Randle's Incident Report stated that "The interview ended at 2200 hours and Ransom was released." The Court finds that there are genuine issues of fact regarding whether probable cause existed to detain plaintiff and whether plaintiff gave consent to be taken downtown and questioned. Accordingly, defendants' Motion for Summary Judgment as to Sergeant Dearing, Detectives Randle and Grisafe is **DENIED**.

## B. Defendant's Motion to Strike Portions of Plaintiff's Expert Report

Defendants also move to strike portions of plaintiff's expert report because they allege that the expert proffers legal conclusions that are not helpful to a fact-finder and he improperly instructs on the law. Defendants also argue that Mr. Lyman proffers a misleading definition of "probable cause" and "reasonable suspicion" and that his definition of "seizure" is an impermissible legal conclusion.

Plaintiff states in response that the matters of which the defense complains are

9

stated in mirror image by the defense expert.  Plaintiff's counsel states that the Court might consider the possibility of directing the parties to meet and submit a joint stipulation as to certain phrases that should not be uttered by either expert.  Plaintiff's counsel states that he would be willing to participate in such a conference designed to narrow the scope of anticipated expert testimony by the mutual and bi-lateral elimination of certain areas of testimony.

The Court agrees that a joint stipulation by the parties as to certain phrases they agree the experts should not use would assist the Court in narrowing these issues.  If additional issues remain after the parties have met and conferred the parties may file motions in limine.  Accordingly, defendants' Motion to Strike Portions of Plaintiff's Expert Report is hereby **DENIED** (Doc. # 45). Counsel are directed to meet and confer regarding the topics to be avoided by their experts during direct examination.

### C. Defendant's Motion to Deem Admitted

Defendants argue that in opposition to their Motion for Summary Judgment, plaintiff's responses violated Local Rule 56.1, because in some of the responses, plaintiff stated "Admitted . . . but" and attempted to add additional information.  Additionally, there are the "Denied as stated" paragraphs, defendants say that these paragraphs quibble with the wording of the statement, but admit its substance.  Defendants state that these paragraphs do not specifically controvert the facts set forth in the statement, and should therefore be deemed admissions.  Defendants also argue that there are paragraphs that contain no admission, denial or valid objection and denials which are unsupported by the record.

10

Plaintiff responds and states that with regard to the "Admitted . . .but" paragraphs, plaintiff concisely responded and made specific reference to the portions of the record. Additionally, plaintiff states that defendants are seeking to have the Court "deem admitted" 25 paragraphs which the plaintiff has in fact already admitted. With regard to the "Denied as stated" paragraphs, plaintiff states that he denied the allegations and included additional information which clarified and explained the statement.

The Court has reviewed the statement of facts and the plaintiff's responses and finds that although plaintiff may have included additional information which clarified or added additional factual information, it is clear from plaintiff's responses which statements of fact plaintiff was either admitting or denying. Accordingly, the Court hereby **DENIES** defendants' Motion to Deem Admitted (Doc. # 78).

### D. Mediation

The Court notes that the parties engaged in mediation with an outside mediator last year. However, now that discovery has concluded and the dispositive motions have been ruled, the Court believes that the parties could benefit from participating in a second mediation session. The parties may choose to either work with the previous mediator or if the parties agree, the Court would also be willing to refer this case to the director of the Court's Mediation and Assessment Program. If the parties desire to take advantage of this option, they should file a joint motion requesting this referral and the Court will assign the case to the Mediation and Assessment Program Director. The Court directs the parties to conduct their second mediation before **May 28, 2014**, as this is the date scheduled for the pre-trial conference.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **DENIES** defendants' Motion to Strike Portions of Plaintiff's Expert Report and Testimony (Doc. # 45), **DENIES** defendants' Motion for Summary Judgment (Doc. # 57) and **DENIES** defendants' Motion for Order to Deem Admitted (Doc. # 78). The Court **ORDERS** the parties to participate in a second mediation session before **May 28, 2014**.


Date: May 5, 2014                                        **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                            Fernando J. Gaitan, Jr.
                                                                     United States District Judge